UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| APRIL S. BREWSTER, | ) |
| Plaintiff | ) |
| vs. | ) CAUSE NO. 3:04-CV-459 RM |
| DUTCHMEN MANUFACTURING, INC., | ) |
| Defendant | ) |

OPINION AND ORDER

This action comes before the court on Dutchmen Manufacturing, Inc.'s motion for summary judgment on all claims brought against it by April Brewster, or in the alternative, request for an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or relief is not in controversy. For the following reasons, the court grants the summary judgment motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving

party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Dutchmen Manufacturing, Inc. manufactures recreational vehicles in Goshen, Indiana. Dutchmen employed April Brewster for 37 days, from August 16, 2003 through September 22, 2003. Dutchmen hired Ms. Brewster to initially work as a welder, but she was to work as a welder only until a different position became available. This happened during Ms. Brewster's first week of employment when assistant plant manager John Ruiz moved her to the lamination department to work as a foam cutter; Allen Hensley became Ms. Brewster's direct supervisor at that point. After the first couple of weeks of employment, Mr. Ruiz requested that Ms. Brewster perform other duties besides cutting foam, such as cleaning glue, flipping panels, and assist with clean-up.

On September 3, plant manager Hank Johnson met with Mr. Ruiz, Mr. Hensley, and Ms. Brewster to discuss her performance. Dutchmen says (and Ms. Brewster denies) that Ms. Brewster was made aware of her deficient performance at this meeting and that Mr. Johnson informed Ms. Brewster that she had until September 12 to improve or face termination. On September 11, Ms. Brewster suffered a work-related injury to her neck, for which she received same-day medical care from Dunlap Urgent Medical Center. Ms. Brewster returned to work around lunch time and resumed limited work activities. She was paid for the time she spent at the doctor's office, and never personally submitted a worker's compensation claim with respect to the incident.

On September 15, Ms. Brewster's physician cleared her to work full duty on a trial basis. After Ms. Brewster returned to the plant, Mr. Hensley indicated that he did not agree with Dutchmen's decision to have her flip panels because it was "man's work" and she might get hurt. These comments bothered Ms. Brewster, but she accepted Mr. Hensley's assistance and continued to flip panels.

Ms. Brewster met with Mr. Johnson and Mr. Ruiz on September 19. Mr. Johnson informed her that she wasn't performing adequately and that he had decided to terminate her employment. Ms. Brewster asked to talk with Mr. Hensley before the termination took place (to hear his assessment of her abilities), and Mr. Johnson agreed. On September 22, Ms. Brewster arrived at work only to find she no longer had a time card, and so she never officially clocked in for work. A final meeting took place later that morning between Mr. Johnson, Mr. Ruiz, Mr.

3

Hensley, and Ms. Brewster. At that meeting Mr. Hensley acknowledged Ms. Brewster's inadequate performance, and Ms. Brewster was terminated. Ms. Brewster was at the plant for about three hours that day.

Sometime in March 2004, Dutchmen became aware of the unpaid hours Ms. Brewster spent at the plant before her termination. The parties agree that Dutchmen paid Ms. Brewster the $52.83 owed upon learning of the unpaid time, but they disagree as to the payment's promptness. Also in March 2004, Ms. Brewster filed a claim with the Equal Employment Opportunity Commission, asserting various violations of relevant employment laws by Dutchmen. Upon receipt of her right to sue letter, Ms. Brewster filed suit with the court.

Dutchmen moves for summary judgment on all claims asserted against it by Ms. Brewsters complaint. These claims include a Fair Labor Standards Act claim, a Title VII discrimination claim, a common law retaliation claim, and an Indiana Wage Payment Statute (though Ms. Brewster subsequently changed this theory of liability to one under the Indiana Wage Claims Statute).

Dutchmen seeks summary judgment on Ms. Brewster's Fair Labor Standards Act claim. In response, Ms. Brewster states that she concedes Dutchmen finally paid her for her work, but that when it did so it violated Indiana statutory law. Ms. Brewster has not provided the court with any factual or legal argument against Dutchmen's stated reasons for summary judgment on the FLSA claim, so summary judgment is appropriate. Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 862 (7th Cir. 2005) ("unsupported and undeveloped arguments

4

are waived"); *see also* Brasic v. Heinemann's, Inc., 121 F.3d 281, 285 (7th Cir. 1997) ("We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." (citation omitted)).

Dutchmen also moves for summary judgment on Ms. Brewster's Title VII sex discrimination claim. In opposing summary judgment under Title VII, Ms. Brewster has two available methods of proving her claim: the direct and indirect method. Whittaker v. Northern Illinois Univ., 424 F.3d 640, 646 (7th Cir. 2005). Ms. Brewster relies on both methods.

Under the direct method, Ms. Brewster may establish her claim of discrimination based on sex "by presenting direct and/or circumstantial evidence of the employer's discriminatory intent." Whittaker v. Northern Illinois Univ., 424 F.3d at 646. Neither party draws the court's attention to any direct evidence in the record, but rather relies on the circumstantial evidence to make their arguments. In this regard, the court of appeals has

> identified three types of circumstantial evidence relevant to Title VII discrimination cases. The first is suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. The key consideration is the totality of these pieces of evidence[,] none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff. The second type is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. Third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the

5

>  difference in treatment is unworthy of belief, a mere pretext for discrimination.

Walker v. Board of Regents of the Univ. of Wis. Sys., 410 F.3d 387, 394 (7th Cir. 2005) (quotations and citations omitted). Under the direct method, this circumstantial evidence "must point directly to a discriminatory reason for the employers actions. Otherwise, the plaintiff must proceed by way of the well-known indirect route." Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).

Ms. Brewster claims she received less training than her male co-workers, was denied other benefits relating to the number and timing of her assignments (which affected her bonuses), wasn't afforded the same flexibility of when she could leave the job after her work was complete as her male co-workers, and was subjected to periodic sexist comments by her group leader. Ms. Brewster argues that when aggregated, these instances create a convincing mosaic of intentional discrimination.

The record does not contain the requisite circumstantial evidence that directly links her termination to Dutchmen's intentional discrimination. The allegedly deficient training Ms. Brewster received was for a position (as a welder) that she admits she did not want and accepted only on the condition that she would be transferred to a different position as soon as one opened.

There is insufficient evidence that her disparate bonuses and other benefits allegedly enjoyed by her male co-workers resulted from intentional discrimination,

especially in the context of her probationary status as a new employee. Dutchmen's Hourly Employee Information Handbook states the "Company maintains a training period of 30 days. If you are working as a full-time employee scheduled for forty (40) hours or more per week . . . you will become eligible for certain benefits and will be considered a regular employee upon successful completion of the training period." During Ms. Brewster's 37-day employment at Dutchmen, she changed jobs at least once, and the Personnel Action Notice on Ms. Brewster's hiring comments explicitly states her bonus was not yet determined at her hiring date. The record contains very little evidence directly tying any of the allegedly disparate treatment to her gender.

Ms. Brewster alleges only one instance that Mr. Hensley, her direct supervisor, brought her gender into a conversation about work: he told Ms. Brewster he did not like her flipping doors because it was "man's work," and as a girl she might hurt herself. While a direct supervisor's comments can give rise to a triable issue of intentional discrimination, Ezell v. Potter, 400 F.3d 1041, 1051 (7th Cir. 2005) (direct supervisor's frequent statements that he had a plan to eliminate older workers, coupled with statements made directly to the plaintiff regarding his age, were direct evidence of intentional discrimination), the comments of Mr. Hensley are not, in and of themselves, the sort that give rise to an inference of intentional discrimination. Ms. Brewster said in her deposition that Mr. Hensley's comments were in the context of him extending help after she had injured herself, and she also said these statements had no impact on the

duties assigned to her. While such statements are evidence that Mr. Hensley contemplated her gender when assessing her abilities, alone they do not give rise to an inference of intentional discrimination. *See* Oest v. Illinois Dept. of Corrs., 240 F.3d 605, 611 (7th Cir. 2001) (noting the importance of placing comments in context, and "remarks [that] are not contemporaneous with the discharge or causally related to the discharge decision making process . . . are insufficient to create a triable issue of material fact regarding discrimination." (quotations and citations omitted)).

To proceed with her Title VII claim under the direct method of proof, Ms. Brewster must point to evidence that would allow a reasonable jury to infer intentional discrimination by Dutchman. Even when the record is taken in the light most favorable to her, she has not done so. To succeed at the summary judgment level, then, Ms. Brewster must point to evidence sufficient to establish a claim under the indirect method.

> To establish a sex discrimination claim under the indirect method, the *McDonnell Douglas* burden-shifting approach provides as follows: (1) the plaintiff must establish a *prima facie* case of discrimination based on her membership in a protected class; (2) once a *prima facie* case is made, a presumption of discrimination is established and the burden shifts to the defendant to provide a legitimate, non discriminatory reason for the challenged action; and (3) once the defendant meets that burden, the plaintiff must establish that those proffered reasons were mere pretext. In turn, to establish a prima facie case of sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male employees.

Whittaker v. Northern Illinois Univ., 424 F.3d at 647 (quotations and citations omitted).

> Once the plaintiff has met her burden to establish the prima facie case, a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action in question. If the employer does articulate such a reason, then the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination. Throughout this burden-shifting, the ultimate burden of persuasion remains at all times with the plaintiff.

Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 724 (7th Cir. 2005) (quotations and citations omitted.)

The parties agree that Ms. Brewster has satisfied the first and third elements of her *prima facie* case, but they disagree about the other two. Dutchmen argues Ms. Brewster was not meeting its legitimate performance expectations and that it did not treat her any less favorably than similarly situated male employees.

The lack of one element renders Ms. Brewster's prima facie showing inadequate, so the court begins its analysis of Ms. Brewster's identification of a similarly situated employee. In her response, Ms. Brewster says she was treated less favorably than the males in the Lamination Department. This isn't enough: Ms. Brewster must identify another male employee that "is directly comparable to [her] in all material aspects." Herron v. DaimlerChrysler Corp., 388 F.3d 293, 300 (7th Cir. 2004) (quotations and citation omitted). Ms. Brewster must show a male employee who started at a similar time as she did and who worked first in the welding department and then as a foam cutter. These unique characteristics of

Ms. Brewster require a similarly situated male comparator—otherwise they serve as the differentiating factors that render her *prima facie* case inadequate. *See* Ineichen v. Ameritech, 410 F.3d 956, 960-961 (7th Cir. 2005) (when a plaintiff has produced evidence of a similarly situated comparator, she has established "that there were no differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them. . . . [Otherwise,] she has failed to establish a prima facie case of discrimination." (quotations and citations omitted).)

Ms. Brewster has not established a prima facie case under the indirect method, so the court need not resolve the remaining issues as to Ms. Brewster's performance or Dutchmen's nondiscriminatory reason for terminating Ms. Brewster. Ms. Brewster cannot succeed on her Title VII claim under either the direct or indirect method, so Dutchmen is entitled to summary judgement on this claim.

Typically, once the court resolves all issues that invoke the court's original jurisdiction, it will relinquish its supplemental jurisdiction over state law claims and remand them to the state court. *See* East-Miller v. Lake Co. Highway Dept., 421 F.3d 558, 564-65 (7th Cir. 2005) (citing Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.")) However, the decision to relinquish supplemental jurisdiction rests in the court's discretion, *see* 28 U.S.C.

§ 1367(c), and as it is in the interests of justice to resolve the remaining state law claims against Dutchmen, the court declines to remand them to state court.

Under state law, Ms. Brewster alleges Dutchmen terminated her employment for filing a workers compensation claim. In Indiana, an employee may bring a retaliatory discharge claim against an employer if she can show that her employer terminated her employment because she filed a worker's compensation claim. Markley Enter., Inc. v. Grover, 716 N.E.2d 559, 564-65 (Ind. App. 1999) (citing Frampton v. Central Ind. Gas Co., 297 N.E.2d 425 (Ind. 1972)). At summary judgment, a plaintiff "must show more than a filing of a worker's compensation claim and the discharge itself." Markley Enter., Inc. v. Grover, 716 N.E.2d at 565. Rather, "to be successful on a claim for retaliatory discharge, a plaintiff must demonstrate that his or her discharge was solely in retaliation for the exercise of a statutory right." Purdy v. Wright Tree Serv., Inc., 835 N.E.2d 209, 212 (Ind. App. 2005). Therefore, Ms. Brewster must, at the very least, show that she: (1) filed a worker's compensation claim; (2) Dutchmen terminated her employment; and (3) the termination was due to her filing the worker's compensation claim.

The record does not support allowing this claim to proceed. Ms. Brewster said at her deposition that she never filed a worker's compensation claim, and, in fact, never did so because she didn't miss any work and was paid for the time she spent at the doctor's office. Without evidence of Ms. Brewster actually filing a workers compensation claim, or exercising some related statutory right, she

11

cannot prevail under Indiana's common law retaliatory discharge doctrine. Dutchmen is entitled to summary judgment on this claim.

There is some disagreement as to the statute under which Ms. Brewster brings her final claim that Dutchmen failed to timely pay her for the three hours she was at work the day Dutchmen terminated her. While the complaint states Ms. Brewster is suing under the Indiana Wage Payment Act, IND. CODE § 22-2-5-1, *et seq.,* her summary judgment response contains arguments under Indiana's Wage Claims Act, IND. CODE § 22-2-9-1, *et seq.*.

> Although both the Wage Claims Statute and the Wage Payment Statute set forth two different procedural frameworks for wage disputes, each statute applies to different categories of claimants. The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. I.C. § 22-2-9-2(a)(b). By contrast, the Wage Payment Statute references current employees and those who have voluntarily left employment, either permanently or temporarily. I.C. § 22-2-5-1(b)

St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 705 (Ind. 2002); *see also* E&L Rental Equip., Inc. v. Bresland, 782 N.E.2d 1068, 1070 (Ind. App. 2003) ("The Wage Claims statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. By contrast, the Wage Payment statute applies to current employees and those who have voluntarily left employment, either permanently or temporarily." (citations and footnote omitted)). Because Ms. Brewster was separated from her employment by Dutchmen at the time of the dispute, she must proceed, as she has in her response, by way of the

Wage Claims Statute. She may not do so, though, by way of filing a suit with the court, since "[c]laimants who proceed under the Wage Claims statute may not file a complaint with the trial court. Rather, the wage claim is submitted to the Indiana Department of Labor." E&L Rental Equip., Inc. v. Bresland, 782 N.E.2d at 1070 (citing St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele, 766 N.E.2d at 705). This bar precludes Ms. Brewster from bringing her Indiana Wage claim with the court, and because there is no stated basis that would exempt or exclude her from complying with this requirement, she cannot proceed.

Therefore, for the reasons stated above, Dutchmen is entitled to summary judgment on all of the claims asserted against it by Ms. Brewster. Therefore, the court GRANTS Dutchmen's motion [Doc. No. 20], and VACATES the final pretrial conference set for January 3, 2006, the trial setting on January 17, 2006, and any other remaining trial related deadlines.

SO ORDERED.

ENTERED:   December 21, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court